AO 91 (Rev. 11/11) Criminal Complaint

**FILED**
October 13, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Myrna Gallegos
DEPUTY

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

United States of America
v.
Clemente Fernando VAZQUEZ Serna

*Defendant(s)*

Case No. **EP-26-MJ-4999-ATB**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 11, 2026 in the county of El Paso in the Western District of Texas , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC Section 2252(a)(4)(B) | Possession of Material Involving the Sexual Exploitation of Children |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Javier Alvidrez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/13/2026

*Judge's signature*

City and state: El Paso, Texas

Anne T. Berton, U.S. Magistrate Judge
*Printed name and title*

Complaint sworn to telephonically on October 13, 2026 at 01:26 PM and signed electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent ("SA") Javier Alvidrez, herein after "Affiant, being duly sworn do hereby depose and state:

1. Affiant is an SA with Homeland Security Investigations (HSI) assigned to the Office of the Special Agent in Charge (SAC) El Paso Office. Affiant has been employed with HSI as a Special Agent (SA) since 2010 and currently assigned to the Cyber Crimes Group (CCG). Affiant is authorized to investigate crimes involving the sexual exploitation of children to include violations of 18 U.S.C. § 2252(a)(4)(B)-Possession of Child Pornography.

2. The statements contained in this Affidavit are based on Affiant's experience, background as a SA, and on information provided by other law enforcement officers. Your Affiant has not included all facts known concerning this matter, but only facts necessary to set forth probable cause.

3. On October 11, 2026, U.S. Customs and Border Protection Officers (CBPO) and Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Officers were conducting outbound inspection operations at the Bridge of The Americas Port of Entry, El Paso, Texas. At approximately 08:10 a.m., a yellow colored Transborde bus was selected for inspection. CBPO Jaime Cruz Rodriguez boarded the bus and asked all passengers for documentation establishing their lawful admission to or presence in the United States. CBPO Rodriguez encountered a male subject who presented a Mexican birth certificate bearing the name of Clemente Fernando VAZQUEZ Serna, 34 years of age, and a minor juvenile female (MV1) who presented a Mexican birth certificate indicating MV1 is 14 years of age. Both passengers did not have documentation establishing lawful presence or admission in the United States and were escorted off the bus for further inspection.

4. In secondary, VAZQUEZ stated to CBPO's and ICE ERO officers that he and MV1 were "partners" and that he knew her family in Mexico. VAZQUEZ added that he and MV1 had moved to Colorado together. VAZQUEZ stated he did not know if MV1's family was aware of their intended travel to Mexico. VAZQUEZ stated he was travelling to Guanajuato, Mexico to stay with his ill mother and that he was taking MV1 to stay with her family members in Mexico.

5. At the time of inspection, VAZQUEZ was in possession of a blue Motorola G cellular phone. VAZQUEZ acknowledged to CBPO Rodriguez he was the owner and sole user of the device and that he had the device for approximately one year. CBPO Rodriguez

conducted a basic search of the device and observed a file depicting suspected Child Sexual Abuse Material. At that point, CBPO Cruz terminated the search.

6. MV1 stated to CBP and ICE ERO Officers that she was 14 years of age and that she and VAZQUEZ have been in a relationship for approximately 3-4 weeks. MV1 stated her mother was aware of her whereabouts but not in accordance with her leaving Colorado. ICE ERO officers contacted MV1's mother, Angelica Rangel Sapien, who advised officers she had no knowledge that MV1 departed Colorado. MV1 did not have permission to be with VAZQUEZ or travel into Mexico. MV1 later acknowledged to officers she and VAZQUEZ were in a sexual relationship and that VAZQUEZ was aware of her age.

7. At the time of inspection, MV1 was in possession of two cellular phones. CBPO's conducted a basic search of an Apple iPhone 13 Pro Max and observed multiple files depicting Child Sexual Abuse Material. CBPO's terminated the search and contacted HSI.

8. Your affiant and Special Agent (SA) Steven Olivanti were briefed of the incident by CBPO's. SA Olivanti responded to the BOTA Port of Entry and was provided with cellular phones in possession of VAZQUEZ and MV1. SA Olivanti conducted a manual search of the Motorola G cellular device and observed the device was in airplane mode. SA Olivanti observed a file which depicted CSAM as defined under 18 USC 2256. The file was stored within the photo gallery of the device. The file is a self-produced video depicting a female minor child (MV1) lying down with breasts exposed. The child is manually stimulating an adult male's penis with her right hand. The child has her left arm protecting her face from ejaculation.

9. VAZQUEZ and MV1 were determined to be illegally present in the United States. Both subjects and their property were transported to ICE Co-location for processing. Your affiant and SA Olivanti proceeded to conduct an interview with MV1. During the interview, MV1 reiterated her statements made earlier to CBP and ICE ERO Officers. MV1 affirmed she had been involved in a personal relationship with VAZQUEZ for approximately one month and that they lived together in Ft. Lupton, CO. MV1 stated her parents did not approve of her relationship with VAZQUEZ. MV1 stated her parents were not aware of her intended travel to Mexico with VAZQUEZ.

10. MV1 stated VAZQUEZ told her he was 27 years of age when she initially met him and that VAZQUEZ was aware MV1 was 14 years of age. MV1 later observed a birth certificate indicating VAZQUEZ was older. MV1 did not ask VAZQUEZ about the discrepancy because she did not want to cause problems between them. MV1stated she

was traveling with VAZQUEZ to Guanajuato, Mexico for economic reasons and did not plan to return to the United States. Once in Mexico, MV1 and VAZQUEZ planned to continue their relationship. MV1 stated she was never threatened or coerced to remain in a relationship with VAZQUEZ.

11. MV1 acknowledged she was the user of two cellular phones found in her possession at the time of inspection. One of the devices, an iPhone 13 Pro Max, had been provided to MV1 by VAZQUEZ when she moved out with him. The iPhone 13 Pro Max is manufactured in China and distributed in interstate and international commerce. MV1 provided written consent to Agents to conduct a search of her cellular devices. SA Olivanti conducted a manual search of the iPhone 13 Pro Max and observed multiple files depicting self-produced CSAM stored in the photo gallery. The files depicted MV1 and VAZQUEZ engaging in sexual acts to include the same video present on VAZQUEZ' Motorola G cellular phone described above.

12. MV1 stated all files depicting sexual acts present on the device involved only herself and VAZQUEZ. MV1 stated it was her idea to record the sexual acts. At times, VAZQUEZ would conduct the recordings. All recordings were done on MV1's iPhone 13 Pro Max. MV1 recalled sending one of the videos to VAZQUEZ via the WhatsApp application. WhatsApp is a free messaging and calling application in which users can share text messages, media files such as photos and videos, and video calls. The application operates via an internet connection. The internet is a facility of interstate commerce.

13. MV1 acknowledged she and VAZQUEZ were aware it was against the law for an adult to be sexually involved with a minor child, under 18 years of age, both in the United States as well as in Mexico. MV1 stated she and VAZQUEZ were aware that there would be legal problems if they continued their relationship. MV1 stated she was told by VAZQUEZ that he would be in trouble since she was a minor. MV1 stated she told VAZQUEZ she did not want to cause him problems but wanted to remain in the relationship.

14. Affiant and SA Olivanti conducted a telephonic interview with MV1's mother, Angelica RANGEL Sapien, who reiterated statements she provided to ICE ERO and CBP officers. RANGEL stated she currently resides in Plateville, CO. MV1 had lived with RANGEL up until a month ago. MV1 moved out of her parents' residence to live with VAZQUEZ at an unknown location. RANGEL stated she last saw MV1 and VAZQUEZ about a week ago. RANGEL stated was not aware of MV1 travelling to Mexico with VAZQUEZ nor did she or her husband approve of their relationship.

15. VAZQUEZ was read his Miranda Warnings in the Spanish language by Affiant and witnessed by SA Olivanti. VAZQUEZ acknowledged he understood his rights and requested to speak with an attorney. The interview was then terminated.

16. There is reason to believe, and your Affiant does believe, there is probable cause that VAZQUEZ, while using a facility of interstate and foreign commerce, did possess material depicting the sexual exploitation of children in violation of 18 U.S.C. § 2252(a)(4)(B).

17. This affidavit is intended to show merely that there is sufficient probable cause for the arrest of VAZQUEZ and does not set forth all the Affiant's knowledge about this matter.

Javier Alvidrez
Special Agent

Subscribed and sworn before me this 13th day of October 2026

Anne T. Berton
United States Magistrate Judge